FILED

JAN 1 6 2020

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS VILLAS (1), and<br>DAVID CABRERA LOPEZ (2),<br><br>Defendants. | Case No.: **20MJ0173**<br><br>**COMPLAINT FOR VIOLATION OF**<br><br>Title 21 U.S.C. § 841 and 846 – Conspiracy to Possess Controlled Substances with Intent to Distribute; Title 18, U.S.C. § 922(g)(1) and 924(a)(2) - Felon in Possession of a Firearm; |

The undersigned complainant, being duly sworn, states:

### COUNT 1

Beginning on a date unknown to the grand jury and continuing up to and including January 7, 2020, within the Southern District of California, and elsewhere, defendants CARLOS VILLAS and DAVID CABRERA LOPEZ did knowingly and intentionally conspire together, with each other and with others known and unknown, to possess with the intent to distribute 400 grams and more of N-phenyl-N- [1- (2-phenylethyl) -4-piperidinyl] propanamide (commonly known to as fentanyl), a Schedule II Controlled Substance; and 500 grams and more of a mixture or substance containing a detectable

amount of methamphetamine, a Schedule II Controlled Substance; all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## COUNT 2

On or about January 7, 2020, within the Southern District of California, defendant DAVID CABRERA LOPEZ, knowing his status as a convicted felon, that is, a person having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm that traveled in and affected interstate commerce, to wit: a Ruger handgun, model: LC9S, bearing serial number: 327-24847; in violation of Title 18, United States Code, Section 922(g)(1).

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

Roberto Chavez, Special Agent
Drug Enforcement Administration

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS _16_ th, DAY OF JANUARY 2020.

HON. BERNARD G. SKOMAL
U.S. MAGISTRATE JUDGE

2

# STATEMENT OF FACTS

I, Special Agent Roberto Chavez, of the Drug Enforcement Administration ("DEA"), declare that the following is true and correct to the best of my recollection:

*Introduction*

1. During 2019, DEA has been investigating the drug distribution activities of the Carlos Villas ("Villas") Drug Trafficking Organization ("Villas DTO").

2. The following is based on my own investigation, and discussions with other law enforcement officials familiar with this case and/or with these types of crimes. Since this Statement of Facts is for a limited purpose, I have not included each every fact I know about this investigation. Rather, I set forth only those facts necessary to establish an appropriate factual foundation for the requested criminal complaint. Dates and times are approximate. The term "agent," as used herein, collectively refers to federal, state and local law enforcement officers conducting the instant investigation.

*Physical Surveillance of Drug Transfer*

3. On January 7, 2020, during the course of physical surveillance, agents observed two vehicles park in the rear of a McDonalds restaurant in the Southern District of California. The vehicles were a white 2017 Nissan Sentra ("White Nissan") and a white Jeep Renegade ("White Jeep"). The White Nissan was occupied by two Hispanic male adults; later identified as David Cabrera Lopez (the driver ("Lopez")) and Villas. The White Jeep was occupied by one Hispanic male adult ("Driver of the White Jeep").

4. After parking, agents observed Villas briefly speak with Driver of the White Jeep. Villas then removed what appeared to be a large black speaker box from the White Jeep. Lopez opened the back passenger door of the White Nissan, and Lopez placed the black speaker box onto the rear seats of the White Nissan. Following the transfer of the black speaker box, all three individuals drove away from the area.

*Introduction of the 5964 Residence*

5. Following the aforementioned transfer, investigating agents maintained surveillance of the White Nissan. However, surveillance agents briefly lost sight of the

3

White Nissan upon its ultimate arrival at a residence located at 5964 Vista San Isidro ("5964 Residence"). The 5964 Residence is located within the Southern District of California. Upon arrival, agents observed that the White Nissan was parked in the driveway of the 5964 Residence.

*Detention of Lopez.*

6. A few minutes later, agents approached the 5964 Residence. As agents approached the White Nissan, they observed that it was unoccupied and that the black speaker box was no longer in the rear passenger seat. A few moments later, Lopez emerged from within the 5964 Residence. After identifying themselves, agents detained Lopez without incident. When asked, Lopez stated that that his friend "Carlos" [Villas] was inside the 5964 Residence and that he didn't know him to have any weapons.

7. Agents, thereafter, agents then made entry into the 5964 Residence and conducted a security sweep inside. Upon entry, agents observed that the rear glass sliding-door was opened. During the security sweep, agents saw the black speaker box in the garage of the 5964 Residence. The speakers had been removed and there were several kilogram-sized packages on the floor adjacent to the speaker box. Inside of the speaker box, there were also several additional clear packages that contained a white crystalline substance. Agents did not locate Villas within the 5964 Residence. Without seizing any evidence, agents thereafter secured the 5964 Residence and awaited the issuance of a search warrant.

*Detention of Villas.*

8. A short time later, a short distance from the 5964 Residence, agents contacted and detained Villas without incident.

*The 5964 Residence's True Occupant Provides Written Consent to Search*

9. As agents awaited for the search warrant application to be made and completed, a Michael Noe ("Noe") arrived at 5964 Residence. Michael stated that he was the current resident and occupant of the 5964 Residence - after having leased the residence on December 11, 2019. Noe explained that he and his family were in the process of moving

into the 5964 Residence. Noe then provided agents with a copy of the lease agreement for the 5964 Residence and again stated that he was the current resident.

10. Noe stated he did not know who owned the White Nissan that was parked in the driveway of the 5964 Residence and that he did not give anyone permission to be inside. Noe then provided written consent to search the 5964 Residence. Inside the 5964 Residence agents recovered the black speaker box along with the aforementioned packages that were adjacent to it.

### *Discovery of Lopez' Handgun*

11. Additionally, during this approximate time, Lopez provided written consent to search the White Nissan. During a search of the White Nissan, agents located a Ruger LC9S 9mm handgun (bearing serial number: 327-24847) that was loaded with six rounds of ammunition; including one in the chamber. This handgun was hidden within the bottom portion of the White Nissan's center dashboard. The side panels, leading to the center dashboard, were easily removed from the driver and passenger floor compartments.

### *The Seized Handgun's Interstate Nexus*

12. Based on my training and experience, personally speaking with an agent from the Bureau of Alcohol, Tobacco and Firearms, and physical markings upon the aforementioned Ruger 9mm handgun (bearing serial number: 327-24847) seized from the White Nissan, I am aware that this particular handgun was manufactured by Sturm, Ruger &Co., Inc. and that this company does not produce any handguns within the State of California. As such, this Ruger 9mm handgun (bearing serial number: 327-24847), seized as described above, would have traveled in interstate commerce.

### *Lopez is a Member of a Prohibited Class*

13. According to Court records, during June 2017, in California Superior Court, County of San Diego, case#: SCS288561, Lopez was personally present when he entered a guilty plea to, and was convicted of, violating California Penal Code ("PC") Section 32 – Accessory, a felony. This PC 32 charge was for a crime that was punishable by imprisonment for a term exceeding one year.

5

///

///

### *Presumptive Analysis of the Seized Contraband*
#### *Thirteen Packages of a Powdery White Substance*

14. In total there were thirteen kilogram-sized packages; six of them had a green plastic wrap packaging, and seven had clear plastic wrap which showed a white powdery substance inside. The packages were tactilely and visually uniform and consistent with each other and, based upon this, it was believed that all the aforementioned thirteen packages contained the same substance. These thirteen packages had a combined gross weight of 13.45 kilograms.

#### *Seven Packages of a White Crystalline Substance*

15. In addition, to the aforementioned thirteen packages, there were a separate seven packages that also contained a white crystalline substance. These seven packages had a combined gross weight of 18.7 kilograms.

16. Agents conducted a presumptive field test of two of the thirteen packages (one clear package and one green package) and the substances in each of these two packages tested positive for N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl)(Schedule II). A presumptive test was also conducted on one of the crystalline packages which, in turn, tested positive for methamphetamine (Schedule II).

17. Based upon the quantity of the seized contraband, 18.7 kilograms of methamphetamine and 13.45 kilograms of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), and Villas' statements regarding further distribution (discussed in greater detail below), I believe that the aforementioned controlled substances were possessed with the intent to distribute.

### *Lopez Makes Admissions Regarding Drugs*

18. During a recorded post-*Miranda* interview, Lopez stated that he and Villas were acquaintances. Lopez admitted to driving to a McDonalds restaurant, with Villas, to meet with someone. Lopez then stated that they both then met "some guy," from whom

6

Villas received a black speaker box which Villas put into the back seat of Lopez' White Nissan. Lopez stated that he didn't ask what was inside of the black speaker box but assumed it contained drugs: adding, "maybe weed."

### *Lopez Makes Admissions Regarding the Loaded Handgun*

19. Furthermore, Lopez admitted to owning the 9mm Ruger handgun discovered within in the White Nissan. Lopez explained that his friend gave him the 9mm Ruger handgun approximately five to six months earlier.

### *Villas Makes Admissions Regarding Drugs*

20. During the recorded post-*Miranda* interview, Villas stated that he knew that there were drugs inside of the black speaker box. Villas also added that the drugs in the black speaker box did not belong to him and that he was receiving them for the purpose of further distribution.

21. During a subsequent consent search of Villas' cellular telephone, agents located a video depicting the removal of the speakers from the black speaker box. From the perspective of the video camera, agents could see Villas' distinctive orange shoes on the bottom of the screen as though he was the person holding the camera/telephone. The same video also showed another person utilizing a cordless drill to remove the actual speakers from the black speaker box. The person removing the speakers was wearing a long-sleeved blue shirt with white lettering on the left arm. This long sleeved, blue shirt with white lettering on the left forearm was identical to the exact shirt Lopez was then wearing. The drugs within the black speaker box could be seen during this video.